UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA ST. JOHN, | CIVIL ACTION |
| Plaintiff, | |
| | COMPLAINT |
| v. | |
| CACH, LLC, a Colorado Limited Liability Company | JURY TRIAL DEMANDED |
| Defendant. | |

**COMPLAINT FOR RELIEF PURSUANT
TO THE FEDERAL FAIR DEBT COLLECTION PRACTICES ACT**

NOW COMES the Plaintiff, PAULA ST. JOHN, ("Paula"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendant, CACH, LLC, A COLORADO LIMITED LIABILITY COMPANY (CACH), as follows:

**NATURE OF THE ACTION**

1. This is an action by a consumer to secure redress from unlawful credit and collection practices engaged in by Defendant, CACH. Paula alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2. The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

1

## JURISDICTION AND VENUE

3. This action arises under, and is brought pursuant to, the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1692k (FDCPA) and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States, and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. §1367.

4. Venue and personal jurisdiction in this District is proper because Defendant transacts business in this District and Defendant's collection communications and practices impacted Plaintiff within this District.

## PARTIES

5. Paula is a natural person who resides in the Northern District of Illinois and is a "consumer," as defined by the FDCPA, 15 U.S.C. §§1692a(3).

6. At all times relevant to the action, the Defendant, CACH, LLC, was a limited liability company with offices located in Denver, Colorado. CACH, LLC is a third-party debt purchaser that is in the business of purchasing debts. Some of the debts purchased by CACH, LLC ("CACH") are debts allegedly held by Illinois consumers.

7. CACH is in the business of purchasing or acquiring, or claiming to purchase or acquire, allegedly defaulted debts originally owed to others and incurred for personal, family or household purposes.

8. CACH is a "debt collector" as defined by the FDCPA, because it uses "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and it "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…" 15 U.S.C. 1692(a)(6).

## STATEMENT OF FACTS

9. On September 17, 2012, CACH, through its trial counsel, filed a two-count complaint ("Complaint") against Paula in the Circuit Court for the Sixteenth Judicial Circuit in Kendall County, Illinois[1]. The case was commonly known as CACH, LLC v. Paula Zimmerman, case number 2012 LM 707 ("Kendall County matter").[2] *See* Exhibit 1, a true and correct copy of the Complain in the Kendall County matter.

10. Both counts of CACH's Complaint alleged a breach of unwritten contract based on Paula's alleged failure to make payments on two different credit card accounts—one issued by Wells Fargo Bank, N.A. and one issued by MBNA America, N.A. *See* Exhibit 1 at ¶¶3 and 10.

11. In both counts, CACH alleged that it had become the owner of the subject credit card account. *Id.* at ¶¶6 and 13.

**Count I of CACH's Complaint**

12. Count I of CACH's Complaint was supported by three documents: 1) Exhibit A, the affidavit of Tom Vigil ("Vigil"), an employee of CACH; 2) Exhibit B, an Account Information Report generated by CACH; and 3) Exhibit C, a redacted Short Form Purchase Agreement. *See* Exhibit 1-A, 1-B, and 1-C.

13. Mr. Vigil's affidavit is purportedly based upon both hard copy information and electronic information. Based on the context of the affidavit, this information was furnished to CACH by a third-party. *See* Exhibit 1-A at ¶¶1-3.

---

[1] On December 3, 2012 Kendall County became part of Illinois' 23rd Judicial Circuit.
[2] Zimmerman was Paula's maiden name.

14. Although the affidavit attempts to lay the foundation for a business record that would satisfy the exception to the rule against hearsay as codified at IL Rules of Evidence 803(6), the purported business records were not generated by CACH, but by a third-party. *See* Exhibit 1-A at ¶3.

15. Mr. Vigil does not specifically identify which entity generated the purported business records. *Id.*

16. Mr. Vigil provides no basis for his knowledge of the business practices of this unnamed third-party.

17. Moreover, there are no exhibits attached to Mr. Vigil's affidavit. As such, there was no way for Paula to know whether the statements in the affidavit are correct. However, those statements appear to be corroborated by the other exhibits attached in support of Count I.

18. Mr. Vigil's affidavit also does not establish the complete chain of title to the credit card account which CACH purportedly acquired.

19. Specifically, Vigil's affidavit does not identify from whom or when CACH purportedly acquired the Wells Fargo account, nor does it specify whether the account was acquired directly from Wells Fargo or another entity.

20. In Illinois, a debt buyer must establish the entire chain of title to a debt, describing how and when each transfer in the chain took place. *See* 735 ILCS 5/2-403(a).

21. CACH does not produce the documents necessary to establish the veracity of Vigil's affidavit.

22. CACH's Exhibit C is a Bill of Sale between CACH and Wells Fargo dated August 15, 2011; it makes absolutely no reference to Paula's specific Wells Fargo account. *See* Exhibit 1-C.

4

23. As such, the Bill of Sale fails to establish how and when CACH acquired Paula's Wells Fargo account.

24. Upon information and belief, Vigil is a "robosigner," i.e. an individual who is designated to execute documents. His day to day activities consist primarily of signing documents without first hand knowledge of the information contained therein. He signs over 1,000 documents per day.

25. Upon information and belief, Vigil does not research any of the information contained in the documents he signs, nor is he held personally liable for the accuracy of information in the documents he signs.

**Count II of CACH's Complaint**

26. Count II of CACH's Complaint was supported by three documents: 1) Exhibit D, another affidavit of Tom Vigil ("Vigil"); 2) Exhibit E, an Account Information Report generated by CACH; and 3) Exhibit F, a Bill of Sale and Assignment of Loans. *See* Exhibit 1-D, 1-E, and 1-F.

27. Mr. Vigil's affidavit is purportedly based upon both hard copy information and electronic information. Based on the context of the affidavit, this information was furnished to CACH by a third-party. *See* Exhibit 1-D at ¶¶1-3.

28. Although the affidavit attempts to lay the foundation for a business record that would satisfy the exception to the rule against hearsay as codified at IL Rules of Evidence 803(6), the purported business records were not generated by CACH, but by a third-party. *See* Exhibit 1-D at ¶3.

29. Mr. Vigil provides no basis for his knowledge of the business practices of this unnamed third-party.

5

30. Moreover, there are no exhibits attached to Mr. Vigil's affidavit. As such, there was no way for Paula to know whether the statements in the affidavit are correct. However, those statements appear to be corroborated by the other exhibits attached in support of Count II.

31. Mr. Vigil's affidavit also does not establish the complete chain of title to the credit card account which CACH purportedly acquired.

32. Specifically, Vigil's affidavit does not identify from whom or when CACH purportedly acquired the MBNA America, N.A. account, nor does it specify whether the account was acquired directly from MBNA America, N.A. or another entity.

33. In Illinois, a debt buyer must establish the entire chain of title to a debt, describing how and when each transfer in the chain took place. *See* 735 ILCS 5/2-403(a).

34. CACH does not produce the documents necessary to establish the veracity of Vigil's affidavit.

35. CACH's Exhibit F is a Bill of Sale and Assignment of Loans between CACH and FIA Card Services, N.A. dated August 29, 2011; it makes absolutely no reference to Paula's specific MBNA America, N.A. account. *See* Exhibit 1-F.

36. As such, the Bill of Sale and Assignment of Loans fails to establish how and when CACH acquired Paula's MBNA America, N.A. account.

37. Also attached to Exhibit F is a document entitled "Assistant Secretary's Certificate of FIA Card Services, National Association, which appears to explain various mergers between banks including MBNA America, N.A. and FIA Card Services, N.A. *Id.*

38. Even with the these additional attachments, CACH's Exhibit F fails to establish that CACH owns Paula's specific credit card account because the exhibit does not specifically reference Paula's account.

6

**Paula's Defense of the Kendall County Matter**

39. Concerned that CACH would obtain a judgment against her, and concerned that CACH had ownership of the subject accounts, Paula retained counsel to defend against CACH's lawsuit.

40. Based on CACH's failure to establish how and when it purportedly acquired the credit card accounts, Paula's defense counsel filed a motion to dismiss for lack of standing and for failure to state a claim on April 18, 2013. It was set for presentment on May 1, 2013. *See* Exhibit 2, a true and correct copy of the motion to dismiss and attached notice of motion.

41. The motion alleged that CACH failed to adequately state a claim for breach of an unwritten contract, and that CACH failed to properly establish the chain of title to the subject accounts.

42. On May 1, 2013, CACH's trial counsel requested leave to amend CACH's complaint. CACH was granted 30 days to amend. *See* Exhibit 3, a true and correct copy of the May 1, 2013 order.

43. CACH elected to amend its complaint in order to cure the deficiencies complained of in Paula's motion to dismiss.

44. However, CACH did not amend its complaint—CACH filed a motion to voluntarily dismiss its own case on May 31, 2013. *See* Exhibit 4, a true and correct copy of CACH's motion to voluntarily dismiss the Kendall County matter.

45. Under Illinois law, a plaintiff is free to dismiss its own case at any time before the commencement of trial. *See* 735 ICLS 5/2-1009.

46. Also, under Illinois law, a court may consider a dispositive motion filed before a plaintiff seeks to voluntarily dismiss its own case. *See* 735 ILCS 5/2-1009.

47. On June 26, 2013, Paula filed a motion to strike CACH's motion to voluntarily dismiss the case, requesting a ruling on her pending motion to dismiss. It was set for presentment on July 3, 2013. *See* Exhibit 5, a true and correct copy of Paula's motion to strike CACH's motion to dismiss and attached notice of motion.

48. On July 3, 2013, a briefing schedule was set for Paula's motion to strike CACH's motion to dismiss; a hearing date of August 30, 2013 was also set. *See* Exhibit 6, a true and correct copy of the July 3, 2013 order.

49. In its August 2, 2013 response brief, CACH addressed both Paula's motion to strike CACH's motion to dismiss and Paula's motion to dismiss for lack of standing and failure to state a claim. *See* Exhibit 7, a true and correct copy of CACH's August 2, 2013 response brief.

50. CACH's response brief first argues that CACH's right to dismiss its own case was absolute in particular because CACH's original complaint was stricken. *Id.* at pg 2.

51. However, this is a misrepresentation of the record, which does not reflect that CACH's complaint was ever stricken. *See* Exhibit 3.

52. CACH's response brief also alleges that CACH possessed the requisite standing to bring the Kendall County matter against Paula. *See* Exhibit 7 at pg 9.

53. In support of this allegation, CACH attached two heavily-redacted documents that it claimed identified Paula's Wells Fargo and MBNA accounts as ones transferred to CACH. *See* Exhibits 7-C and 7-D.

54. These documents were utterly devoid of context and bore no markings that would authenticate them in any manner whatsoever. *Id.*

55. On August 13, 2013, Paula filed her reply in support of her joint motion to dismiss. *See* Exhibit 8, a true and correct copy of Paula's reply brief.

56. On August 30, 2013, after hearing oral arguments, the court granted Paula's motion, dismissing the Kendall County matter with prejudice. *See* Exhibit 9, a true and correct copy of the August 30, 2013 order.

57. Throughout the pendency of the Kendall County matter, CACH represented that it was the owner of Paula's Wells Fargo and MBNA credit card accounts.

58. In its August 2, 2013 response brief, CACH spent a total of seven pages arguing that it was the owner of the Wells Fargo and MBNA credit card accounts. *See* Exhibit 7 at pp 2-9.

59. Moreover, CACH produced additional documents that is alleged supported its standing to sue. *Id.*

60. CACH actively concealed its lack of standing throughout the pendency of the Kendall County matter.

61. Upon information and belief, CACH purports to acquire debts pursuant to agreements that disclaim the accuracy of the information provided; the accounts are sold "as-is," with no representations as to the accuracy of the information provided.

62. CACH endeavors to avoid producing their agreements for the purchase and sale of debts in the collection lawsuits they bring against consumers.

63. Moreover, CACH routinely attempts to demonstrate its standing to sue by providing documents such as the ones found in Exhibits 7-C and 7-D to consumers and their counsel.

64. These documents cannot prove CACH's standing because they are unauthenticated and, upon information and belief, sold to CACH without any warranty or guaranty of accuracy.

9

65. CACH actively conceals the nature of its defective standing; an unsophisticated consumer would not know that these as-is purchase agreements exist.

66. In the Kendall County case, CACH further concealed its evidentiary issues by requesting leave to amend its complaint. Such a request indicates that a party can adequately plead and prove its case.

67. CACH's conduct cost Paula time and money; she had to retain counsel to defend against the Kendall County matter.

68. Moreover, CACH's conduct was vexatious and highly upsetting to Paula.

## COUNT I - VIOLATIONS OF FDCPA

69. Paula repeats and realleges paragraphs 1 through 68 as though fully set forth herein.

70. CACH violated 15 U.S.C. §§1692e(2) and 1692e(10) by actively concealing the evidentiary issues surrounding its claims in the Kendall County matter.

71. CACH's concealment was part of an attempt to collect a debt.

72. CACH's conduct is inherently false and misleading because it represents that it can prove its case when it has no intention of actually doing so.

73. CACH violated 15 U.S.C. §1692f because its conduct in the Kendall County matter was an unfair means of attempting to collect a debt.

74. By seeking leave to amend its complaint, then instead seeking to dismiss its case, CACH engaged in unfair conduct; it was either unprepared to submit a legally sufficient complaint or it was unable to do so.

75. CACH intended to avoid the effect of Paula's dispositive motion by non-suiting its own case. This kind of conduct is inherently unfair because it seeks to exploit procedural rules to benefit creditors and harm consumers.

76. Had CACH's motion to voluntarily dismiss been granted, CACH would have been able to bring a second lawsuit against Paula, thus causing her to incur more court costs and attorney's fees.

77. As a result of this unfair conduct, Paula had to expend time and money defending against a lawsuit that CACH had no intention of litigating.

78. CACH's conduct in the Kendall County matter is an inherent violation of the FDCPA because CACH actively concealed its inability to prove its case.

79. It is CACH's regular business practice to actively conceal its lack of standing and inability to prove its case in an attempt to induce consumers to settle the lawsuits that CACH files.

80. Paula is therefore entitled to an award of statutory damages, actual damages, and legal fees pursuant to 15 U.S.C. 1692k.

WHEREFORE, Plaintiff, PAULA ST. JOHN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c. awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

d. awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF ILLINOIS
## CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

81. Paula restates and realleges paragraphs 1 through 80 as though fully set forth herein.

82. CACH violated 815 ILCS 505/2 by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation in its attempt to collect debt from Paula.

83. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

84. CACH's attempt to collect a debt is part of the conduct of any trade or commerce.

85. Paula is a consumer as defined under ICFA.

86. CACH's active concealment of its evidentiary issues and lack of standing represents a material misrepresentation, made in the conduct of trade or commerce.

87. CACH intended that Paula rely on its misrepresentations.

88. Additionally, CACH's abusive trial strategy was inherently unfair to Paula—CACH represented that it would amend its complaint, then moved to voluntarily dismiss; it was either unprepared to submit a legally sufficient complaint or it was unable to do so.

12

89. CACH intended to avoid the effect of Paula's dispositive motion by non-suiting its own case. This kind of conduct is inherently unfair because it seeks to exploit procedural rules to benefit creditors and harm consumers.

90. Had CACH's motion to voluntarily dismiss been granted, CACH would have been able to bring a second lawsuit against Paula, thus causing her to incur more court costs and attorney's fees.

91. As a result of this unfair conduct, Paula had to expend time and money defending against a lawsuit that CACH had no intention of litigating.

92. ICFA further states:

> Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper.

815 ILCS 505/10a

93. Paula was harmed by CACH's unfair and deceptive practices because she had to spend time and energy defending against CACH's frivolous lawsuit.

94. Paula was further harmed by CACH's unfair and deceptive practices as she incurred costs in hiring an attorney to defend against the Kendall County matter.

95. Moreover, upon information and belief, these unfair and deceptive practices are part of a pattern and practice of behavior in which CACH routinely engages as part of its business model.

96. An award of punitive damages is appropriate because CACH's conduct described above was willful and wanton, and showed a reckless disregard for the protections afforded by the Illinois Consumer Fraud Act and Plaintiff's rights there under.

97. As such, Paula is entitled to relief pursuant to 815 ILCS 505/10a.

WHEREFORE, Plaintiff, PAULA ST. JOHN, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. awarding Plaintiff actual damages and punitive damages, in an amount to be determined at trial, for the underlying violations;

c. awarding the Plaintiff costs and reasonable attorney fees;

d. awarding any other relief as this Honorable Court deems just and appropriate.

**Jury Demand**

Plaintiff demands trial by jury.

Respectfully Submitted,

By: ___s:/Matthew Hector_____

Matthew H. Hector ARDC# 6283058
Dan McGarry ARDC# 6309647
Counsel for Plaintiff
Sulaiman Law Group, Ltd.
900 Jorie Blvd., Suite 150
Oak Brook, Illinois 60523
Phone (630) 575-8181
Fax (630) 575-8188